# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LINDSEY CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-cv-02477-JAR-JPO |
| | ) | |
| GRADIENT FINANCIAL GROUP, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Lindsey Carroll filed an Amended Complaint (Doc. 16) against Defendants Gradient Financial Group, LLC (GFG), Gradient Insurance Brokerage, Inc. (GIB), Aprilly Oberkrom, and Kent Schoen, seeking damages relating to her termination from her position as a Contracting and Licensing Specialist for Defendants. She alleges claims under Title VII of the Civil Rights Act of 1964 (Title VII), the Family and Medical Leave Act (FMLA), and the Pregnancy Discrimination Act. Defendants filed a Motion to Dismiss the amended complaint (Doc. 22), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which is currently before the Court. The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court grants the motion in part and denies the motion in part.

## I. Legal Standard

The Court evaluates Defendants' jurisdictional claim under Rule 12(b)(1). Federal courts are courts of limited jurisdiction and, as such, must have a statutory or Constitutional basis to

exercise jurisdiction.[1] A court lacking jurisdiction must dismiss the case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[2] The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper;[3] "[p]laintiff bears the burden of showing why the case should not be dismissed."[4] Mere conclusory allegations of jurisdiction are not enough.[5]

Generally, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[6]

> "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing

---

[1] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); see *United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.") (internal citations omitted).

[2] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1999).

[3] *Montoya*, 296 F.3d at 955.

[4] *Harms v. IRS*, 146 F. Supp. 2d 1128, 1130 (D. Kan. 2001).

[5] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[6] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

to resolve disputed jurisdictional facts under Rule 12(b)(1)."[7]

The Court evaluates Defendants' non-jurisdictional arguments under Rule 12(b)(6), which provides a vehicle for a party to challenge the legal sufficiency of a claim. The requirements underlying the legal sufficiency of a claim stem from Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[9] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[10] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[11] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[12] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears

---

[7]*Holt*, 46 F.3d at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325); *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

[8]Fed. R. Civ. P. 8(a).

[9]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[10]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[11]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12]*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

unlikely the allegations can be proven.[13]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[14] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[15] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[16] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]

## II. Factual Allegations

Defendants hired Plaintiff as a Contracting and Licensing Specialist on June 7, 2010. Plaintiff notified her supervisor, Aprilly Oberkrom, of her pregnancy in November 2010. After notifying Oberkrom that she was pregnant, Plaintiff alleges Defendants "subjected [her] to negative and unjustified treatment . . . . that she had not experienced before."[18] On March 2, 2011, Plaintiff met with Tony Compton (President of GIB), Oberkrom, and Sara Caster (a co-

---

[13] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[14] *Id.*

[15] *Id.* at 679.

[16] *Id.*

[17] *Id.* at 678.

[18] Doc. 16, at ¶ 27.

4

worker) to discuss "her work situation."[19] Plaintiff fails to provide more details about this meeting. Also in March 2011, Plaintiff sent a letter to Tami Lucius (President of GFG and CEO of GIB), detailing her belief that she was being discriminated against by Oberkrom. She included an evaluation form for Oberkrom. Over the next several months, Plaintiff took occasional paid leave for medical care. On April 27, 2011, Plaintiff received a "Verbal Warning" for alleged excessive absences and was informed by her supervisors it was their belief Plaintiff was using her paid time off too quickly considering how little of the year had transpired. The warning included a new requirement that her paid leave time be pre-approved; Defendants dispute this requirement was new. On May 17, 2011, Plaintiff received a "Written Warning," which included a notice that further absences would result in her termination. On June 13, 2011, Plaintiff left work for the day due to pregnancy complications at the request of her doctor. Before leaving, Plaintiff told Director of Operations Jeremy Swedlund about her condition and the written warnings she had received. Additionally, she asked him to look into the availability of FMLA or temporary disability leave to protect her job. Swedlund told Plaintiff he would look into the availability of the leave. On June 14, 2011, Plaintiff informed Gretchen Beatty (a management employee) that her doctor wanted her on bed rest. Later that day, Kent Schoen (general counsel for GIB and GFG) called Plaintiff to tell her she had been terminated. Around June 28, 2011, Plaintiff filed an administrative charge with the Kansas Human Rights Commission (KHRC) and the Equal Employment Opportunity Commission (EEOC), alleging harassment and disparate treatment in her employment. The charge alleged similar facts to those

---

[19]*Id.*, at ¶ 29.

stated in Plaintiff's First Amended Complaint, but the charge states the discrimination started in January 2011 while the Complaint indicates the discrimination began in November. On July 12, 2012, Plaintiff received a Right to Sue letter from the EEOC.

## III. Discussion

**A. 12(b)(1) Motion:**

Defendants argue that because: (1) GFG was not named in the charge, (2) the claims in Plaintiff's Complaint materially differ from those in the charge she filed with the EEOC, and (3) GFG is not an employer under Title VII, this Court is precluded from gaining subject-matter jurisdiction over GFG and GIB.

### 1. GFG Not Named in Plaintiff's Charge

Before a Federal court may gain subject-matter jurisdiction over a Defendant under Title VII, a plaintiff must have exhausted all administrative remedies.[20] Generally, a plaintiff is required to name a Defendant in an administrative filing prior to filing a suit against them, but courts have sometimes allowed the inclusion of an unnamed party.[21] Generally, Courts have noted that:

> "We do not believe that the procedures of Title VII were intended to serve as a stumbling block to accomplishment of a statutory objective. To expect a complainant at the administrative stage, usually without aid of counsel, to foresee intricate procedural problems which could arise in subsequent litigation, all at the risk of being cast out of court for a procedural error, would place a burden on the complainant which Congress neither anticipated nor

---

[20] *Aramburu v. Boeing*, 112 F.3d 1398, 1409 (10th Cir. 1997).

[21] *See, e.g., Rathke v. HCA Mgmt. Co., Inc.*, 744 F. Supp. 1037, 1039 (D. Kan. 1990).

intended."[22]

The Tenth Circuit has followed this approach. For example, in *Romero v. Union Pac. R.R. Co.*, the Tenth Circuit recognized two narrow exceptions to the "strict rule" when either: (1) the defendant was informally referred to in the charge or (2) the named and unnamed defendants have similar enough interests to give defendant notice and to give the EEOC an opportunity to attempt conciliation.[23] The first exception does not apply here because Plaintiff's charge lists the parties as GIB "and its Representatives;" compared to other cases where this exception was met,[24] the language in Plaintiff's charge is too vague to give GFG adequate notice about the allegations against it.

The second narrow exception is analyzed by balancing the four *Glus v. G. C. Murphy* factors to determine whether the unnamed party had proper notice of the allegations against them.[25] These factors are: (1) how easily plaintiff could have determined the role of the unnamed party and listed them in the charge prior to filing; (2) how similar the interests are between the named and unnamed party; (3) whether the unnamed party has suffered actual prejudice by not being named; and (4) whether the unnamed party has represented to plaintiff that it may be represented through the named party.[26]

---

[22] *Evans v. Sheraton*, 503 F.2d 177, 183 (D.C. Cir. 1974).

[23] 615 F.2d 1303, 1311 (10th Cir. 1980).

[24] *Eldredge v. Carpenters 46 N. Cal. Cntys. Joint Apprenticeship and Training Comm.*, 440 F. Supp. 506, 525 (N. D. Cal. 1977).

[25] 629 F.2d 248, 251 (3d Cir. 1981).

[26] *Id.*

7

In *Glus*, the court held the second exception was satisfied in spite of the International not being named in the administrative charge because: (1) both parties (the International and Local 940) were represented by the same attorney; (2) both parties' interests were essentially identical; (3) both parties' interests were vigorously litigated by the named party; and (4) both parties had been involved in the same collective bargaining agreement underlying the suit.[27] Taking all of these factors together, and considering the *Sheraton* philosophy, the court found it reasonable for the plaintiff to assume the Local 940 represented the interests of the International during the administrative conciliation.[28]

The second exception applies in this case. Here, the factors weighing in favor of including GFG in the suit are: (1) GFG and GIB are both represented by the same attorney, (2) GFG and GIB appear to have similar interests and the allegations against both parties are identical, (3) no evidence exists of any prejudice to GFG from not being included in the administrative charge, and (4) GFG and GIB are under (largely) common ownership. Additionally, Plaintiff was instructed to greet people on the phone for both GFG and GIB at different points in her employment, and the employee handbook she received read "Welcome to GFG." On balance, these factors indicate it was reasonable for Plaintiff to assume GFG's interests were represented by GIB during the conciliation. Thus, under the four *Glus v. G. C. Murphy* factors, the Court finds that GFG had proper notice in spite of not being named in the filing.

---

[27]*Glus*, 629 F.2d at 251.

[28]*Id.* at 252.

**2. Material Differences Between the Complaint and Charge**

Generally, a plaintiff may only bring a Title VII action if they have received a Right to Sue letter over claims contained within a charge.[29] This requirement exists to provide an employer with notice about claims against them and to provide an opportunity for the EEOC to conciliate the claim without the plaintiff bringing suit.[30] But this is not a strict standard; claims in the complaint that are reasonably related to or growing out of allegations listed in the charge may be included in a later Title VII action.[31]

Here Plaintiff's Title VII and FMLA claims are reasonably related to the claims in the charge, because they arise out of Plaintiff's allegations that she was discriminated against by her supervisor due to her pregnancy. Defendants cite two factual discrepancies between the charge and Complaint as constituting a material difference. First, Plaintiff's charge alleges being "given a difficult time when working" after telling Oberkrom she was pregnant[32] while the Complaint alleges Oberkrom was "extremely and unjustifiably critical of Plaintiff's job performance."[33] Second, the charge alleges the discrimination began in January 2011 while her Complaint alleges the discrimination began in November 2010. However, these discrepancies do not preclude a finding that Plaintiff exhausted her administrative remedies. Plaintiff's charge met the purpose of the exhaustion requirement; it provided her employer with notice about claims against them

---

[29]*Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004).

[30]*Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989).

[31]*Id.*

[32]Doc. 33-8.

[33]Doc. 16, at ¶ 27.

9

and provided an opportunity for the EEOC to conciliate the charge without the plaintiff bringing suit. The minor differences noted by Defendants are immaterial for these purposes, and the claims in this suit are reasonably related to or growing out of allegations listed in the charge.

### 3. Title VII Employers

Defendants argue that GFG is not an employer under Title VII because it has less than 15 employees. For an employee to be covered under Title VII, his or her company has to have 15 or more employees for at least twenty weeks prior to the date when the alleged cause of action occurred.[34] If a company does not have 15 employees, an employee only qualifies for Title VII protection if two companies "share" that employee and, added together, the companies have more than 15 employees.[35] Since GFG only had four employees in June 2011, the Court will only have subject-matter jurisdiction over GFG if GIB and GFG "share" Plaintiff under either the joint or single employer test.

The joint employer test analyzes whether the companies: (1) jointly determine the essential terms and conditions of employment; and (2) exercise significant control over the same employees together.[36] For example, in *Virgo v. Riviera Beach Associates*, the court found Sterling Group and Riviera Beach to be joint employers because, although Sterling Group ran the day-to-day operations of the hotel, Riviera Beach paid the employees' salaries and had final

---

[34] 42 U.S.C. § 2000(e)(b).

[35] *Bristol v. Board of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1218-1219 (10th Cir. 2002).

[36] *Id.* at 1219.

authority and responsibility over any labor negotiations.[37] Additionally, the court found that whether Riviera beach actually engaged in labor negotiations was not a determining factor, so long as it had the power to do so.[38]

Here, Plaintiff has met her burden of proving that GFG and GIB shared Plaintiff under the joint employer test. Plaintiff's paycheck was made out to her by GIB, all of the warnings Plaintiff received were signed by management in their positions at GIB, and her initial employment letter had GIB letterhead. But her conduct was governed by a GFG Employee Handbook and Plaintiff used paid leave time forms with GFG letterhead, indicating both companies determined the essential terms and conditions of Plaintiff's employment together. Plaintiff's firing by Kent Schoen, legal counsel for both, indicates both companies jointly exercised significant control over Plaintiff. On balance, sufficient evidence exists to indicate Plaintiff was a "shared" employee under the joint employer test.

Even if Plaintiff did not qualify under the joint employer test, she would still qualify under the single employer test. The single employer test analyzes whether two separate companies are actually the same company.[39] This determination involves a four-part balancing test, which considers the companies': (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.[40]

---

[37] 30 F.3d 1350, 1360 (11th Cir. 1994).

[38] *Id.* at 1361.

[39] *Bristol*, 312 F.3d at 1220.

[40] *Id.*

11

Most courts have viewed the third factor as the most important and as largely dispositive of the outcome of the case.[41]

GIB and GFG shared Plaintiff under the single employer test. Factors one, two, and four are clearly met. GIB and GFG have interrelated operations because they share the same building, address, and phone number. Both companies share common management because Kent Schoen and Brian Lucius hold the same positions at both companies, and Tami Lucius is the CEO and majority shareholder of GIB and President of GFG. Both companies have common ownership and financial control because Tami Lucius has significant ownership and financial stakes in both companies. Although less clear, the third factor is met as well because although Plaintiff's warnings, paychecks, and initial employment letter had GIB letterhead; she was fired by Kent Schoen who was general counsel for GIB and GFG, indicating centralized control of labor relations between the companies. Thus, the Court will aggregate GIB's and GFG's employees, giving the Court subject-matter jurisdiction over GFG. The Court will deny Defendants' Motion to Dismiss on this basis.

**B. 12(b)(6) Motion**

Plaintiff alleges three counts in her Complaint, and Defendants contest all three counts.

Count I alleges that Defendants discriminated against Plaintiff because she was pregnant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and the Pregnancy Discrimination Act. Defendants argue that this claims fails because Plaintiff has failed to

---

[41]*Id.* (citing *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) ("[C]ourts have focused almost exclusively on one question: which entity made the final decisions regarding employment matters relating to the person claiming discrimination?") (internal citations omitted).

12

plausibly allege that other non-pregnant employees were treated differently and were similarly situated.

Count II alleges that Defendants retaliated against Plaintiff because she exercised a protected right under Title VII and the Pregnancy Discrimination Act in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and the Pregnancy Discrimination Act. Defendants argue that Plaintiff has failed to plausibly allege that she exercised a protected right under Title VII and the Pregnancy Discrimination Act.

Finally, Count III alleges that Defendants retaliated and discriminated against Plaintiff because she exercised a protected right under FMLA. Defendants argue that this claims fails because Plaintiff was not an eligible employee under FMLA, was not FMLA-eligible, and did not request or attempt to request FMLA leave.

**1. Count I – Title VII Discrimination Claim**

To defeat a 12(b)(6) motion on a discrimination claim under Title VII, the Complaint must plausibly state that Plaintiff: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) qualified for the position at issue; and (4) was treated less favorably than others not in the protected class.[42]

Only the fourth element is in dispute. Allegations in Plaintiff's Complaint indicating her treatment was less favorable than other, similarly situated, non-pregnant employees are: (1) after Plaintiff notified Oberkrom she was pregnant, Oberkrom subjected Plaintiff to negative and unjustified treatment of her work that she had not experienced before, ultimately resulting in her

---

[42] *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

13

termination for missing too much work, and, in contrast, (2) two non-pregnant employees (Tracey Ronnebaum and T.J. Scott) had absences, but were not criticized or terminated for missing work. However, Plaintiff fails to state whether Ronnebaum and Scott were similarly situated. From the Complaint, the Court cannot determine whether Ronnebaum and Scott had unplanned absences or how often they missed work; the Complaint thus fails to allege facts showing that they were similarly situated to Plaintiff. The Court will grant Defendants' motion with respect to Count I.

### 2. Count II – Title VII Retaliation Claim

To defeat a 12(b)(6) motion for retaliation under Title VII, Plaintiff's Complaint must plausibly allege that: (1) Plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action.[43] The parties dispute only the first and third elements.

For the first element, a person engages in protected opposition to discrimination by formally complaining to their supervisors about perceived discrimination within the workplace[44] or by making informal complaints such as letters sent to supervisors discussing discrimination.[45] In March 2011, Plaintiff sent a letter to her supervisors, detailing her belief she was being harassed and discriminated against. This is sufficient to indicate that she engaged in protected opposition to discrimination.

---

[43] *Id.* at 1192-93.

[44] *Somoza v. Univ. of Denver*, 515 F.3d 1206, 1213-14 (10th Cir. 2008).

[45] *Id.* at 1214.

To determine if plausible causation exists between Plaintiff's protected conduct and an adverse action, courts have looked at how close in time the protected conduct and adverse action are and how reasonable the inference is that the protected conduct was the cause of the adverse action.[46] In *Annett v. University of Kansas*, the protected conduct and adverse action occurred within a three month period, which the court deemed sufficient to show causation for the purpose of making out a prima facie case of retaliation under Title VII.[47] Similarly, Plaintiff's letter to her supervisors, the warnings she received about her overuse of paid leave time, and her firing all occurred within a three-month period, sufficient to show causation for the purpose of making out a prima facie case of retaliation. Thus, the Court will deny Defendants' motion with respect to Plaintiff's retaliation claim.

### 3. Count III – FMLA Retaliation and Interference Claims

In order for an employee to be eligible under FMLA, their employer must have had 50 or more employees within 75 miles of their work site.[48] Plaintiff alleges GIB and GFG employed more than 50 people in Kansas in 2010 and 2011, but does not allege that these 50 people worked at her work site or within 75 miles of her work site, as required to be an "eligible employee." Instead, she merely states that GIB and GFG employed 50 people "who perform work in Kansas." Thus, Plaintiff has not alleged that she was an eligible employee under FMLA, and the Court will grant Defendant's motion to dismiss Count III on that basis.

The Court will grant Plaintiff leave to file a proper motion to amend her Amended

---

[46]*Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996).

[47]371 F.3d 1233, 1240-41 (10th Cir. 2004).

[48]29 U.S.C. § 2611(2)(B)(ii).

Complaint for purposes of showing she is an "eligible employee" for her FMLA claims, provided she does so within 14 days.[49]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 22) pursuant to Federal Rules of Civil Procedure 12(b)(6) is GRANTED with respect to Count I and Count III. The remainder of Defendants' Motion to Dismiss is DENIED. Plaintiff's Count II claim remains.

**IT IS SO ORDERED.**

Dated: July 2, 2013

                                         S/ Julie A. Robinson
                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE

---

[49] *See* Fed. R. Civ. P. 15(a)(2); D. Kan. R. 15.1.